LEHMAN, APPELLANT, *v.* SUTTER ET AL., RESPONDENTS.

(No. 4,328.)

(Submitted April 12, 1921. Decided May 23, 1921.)

[198 Pac. 1100.]

*Mines and Mining Claims—Adverse Claim—Location—Reloca-
tion—Abandonment—Annual Assessment Work.*

Mines and Mining Claims—Adverse Claim—Complaint.

1. In an action to determine an adverse claim to a lode mining claim,
the complaint is sufficient if plaintiff by appropriate allegations shows
his right to the ground covered by his location, without alleging the
nature of defendant's claim, the duty of doing so devolving upon de-
fendant.

Same — Complaint — Location — Defect in Recorded Certificate—Imma-
terial Allegation.

2. In view of the provision of section 2293, Revised Codes, that de-
fects in a recorded certificate of location of a mining claim shall not
be deemed material where the person relying on the defects made his
location with notice thereof, allegations in his complaint, in an action
to determine an adverse claim, relating to such defects are imma-
terial.

Same—When Land not Subject to Location.

3. Mining ground covered by valid and subsisting locations is not
public domain and therefore not open to exploration and purchase
under the federal statute.

Same—Location Within Subsisting Claim Void.

4. An attempted location of a mining claim, based upon a discovery
within a then valid and subsisting claim, is void for the purpose of
laying the foundation for an adverse claim, and does not attach upon
the subsequent failure of the first locator to do the required annual
assessment work.

Same—Failure to Do Assessment Work—Effect.

5. A location of a mining claim upon ground covered by a valid and
subsisting claim, at a time when the senior locator is not in default
under state or federal laws, is subordinate to a relocation by a
stranger made after the rights of the first locator lapsed because of
failure to do the annual assessment work.

Same—Relocation by Owner—When Valid.

6. Under section 2289, Revised Codes, the locator or claimant may
at any time relocate his own claim for any purpose other than to
avoid the doing of the annual assessment work, provided he complies
in all respects with the requirements of sections 2283, 2284 and 2286,
Revised Codes.

Same—Abandonment—Rights of Nonconsenting Cotenant.

    7. Where three of four cotenants of mining claims abandoned them by relocating other claims covering the same ground, the rights of the fourth remained unaffected by their abandonment and, therefore, as to the latter the claims thus abandoned remained valid and subsisting claims until forfeited.

Same—Assessment Work—Preserves Claimant's Right, Until When.

    8. Representation work done on a mining claim during any one year is sufficient to preserve the claimant's right until the 31st of December of the next year.

Same—Relocation by Owner—When Ineffectual.

    9. Where relocators of their own claims did not do the excavation work required to be done, under section 2289, Revised Codes, before another had located the same ground, their attempted relocations were nugatory.

*Appeal from District Court, Fergus County; Roy E. Ayers, Judge.*

Aᴄᴛɪᴏɴ by Oswald Lehman against Julian A. Sutter and others. Judgment for defendants and plaintiff appeals. Reversed and remanded.

*Messrs. Worden & Grant* and *Messrs. Beackford & Huntoon,* for Appellants, submitted a brief and one in reply to that of Respondents; *Mr. E. G. Worden* argued the cause orally.

*Messrs. Marshall & Dousman* and *Mr. J. E. Wasson* submitted a brief; *Mr. Charles J. Dousman* argued the cause orally.

MR. CHIEF JUSTICE BRANTLY delivered the opinion of the court.

This action was brought in pursuance of section 2326 of the Revised Statutes of the United States (U. S. Comp. Stats., sec. 4623), to determine an adverse claim to the Royal Dixie

---

    9. On respective rights of one who relocates mining ground before, and one who relocates it after, the abandonment or forfeiture of a senior location, see notes in 68 **L. R. A.** 842; 16 **L. R. A. (n. s.)** 162.

and Dixie Extension lode mining claims, situate in Fergus county, of which plaintiff alleges he is the owner. To his second amended complaint, the defendants Julian A. Sutter, Eduard Sutter and C. B. Noble demurred, on the ground that it did not state facts to constitute a cause of action, and that it was ambiguous, unintelligible and uncertain. One Claudia Wegner was made a party defendant, but she did not appear in the court below by demurrer or otherwise. The court by a general order sustained the demurrer, and, plaintiff declining to plead further, rendered judgment dismissing the action. Plaintiff has appealed.

The pleading is very voluminous. It alleges in detail the several steps taken by plaintiff in making location of his claims. It then sets forth the facts upon which defendants predicate their claim, and proceeds to allege the conditions existing at the time their locations were made, for the purpose of impeaching their validity, and thus to make it manifest that their claim of title is without foundation. The following statement will be sufficient to present the questions submitted for decision:

The Royal Dixie and the Dixie Extension locations were made by plaintiff on April 21 and May 8, 1917, respectively. Amendments of both of these were made on July 26, 1917. Defendants base their claim upon three conflicting locations, designated as Sutter No. 1, No. 2 and No. 3. No. 1 was located on May 15, and the others on March 15 and 22, 1916, respectively. The two Sutters and Noble were the locators. The claims of both plaintiff and defendants are relocations of ground which had theretofore been substantially covered by claims known as the Dixie and Royal, located by one Henry Nietert on June 5 and October 4, 1909, respectively. These had been represented for each year up to and including the year 1915. On July 14, 1916, Nietert conveyed an undivided nine-tenths interest in them to the defendants, the two Sutters and C. B. Noble. On September 12, 1916, he conveyed the

remaining interest to Claudia Wegner. The subjoined diagram illustrates the relative situation of the several claims and the extent of the conflict between those of plaintiff and defendants.

The Royal and Dixie are designated by the numerals 1, 2, 3, 4 and 5, 6, 7, 8; the Sutter claims by the capital letters A, B, C, D; B, E, F, D and G, H, I, J; and the Royal Dixie and Dixie Extension by the small letters a, b, c, d and c, d, e, f. The point of discovery on the Sutter No. 1 is some distance to the west of the line "B D." This claim is therefore not involved in this controversy, except to the extent of the small area included in the triangle which has its base at "a." The points at which the discoveries of the Sutter No. 2 and No. 3 were made are within the area covered by the Royal Dixie and the Dixie Extension, though they are not indicated on the diagram.

To show the invalidity of defendants' locations, the plaintiff alleges that, in making the locations of the Royal and the Dixie, Nietert fully complied with the laws of the United States and the state of Montana relating to discovery, marking the boundaries, doing the preliminary work, and the making and recording of the certificates of location; that he thus became entitled to the possession of the ground covered by them, and thereafter continued to be entitled to the possession by doing, or causing to be done, the annual assessment work

upon them for each year up to and including the year 1915, and until he made conveyance to the two Sutters, Noble and Claudia Wegner; that each of the Sutter claims was relocated on September 14, 1916, by the defendants other than Claudia Wegner, while the ground was held by Henry Nietert and his grantees, the defendants, under and by virtue of the location of the Dixie and Royal lode claims, and that for this reason the ground covered by these claims was not then unoccupied, unappropriated public land of the United States; that the certificates of location of the Sutter claims do not contain such a description, by reference to natural objects or permanent monuments, as will identify them; that on the Sutter No. 1 and Sutter No. 3 no location work was done by the running of cuts or the sinking of shafts, as required by the statutes of Montana, and that for these several reasons they are not now, and never have been, valid and subsisting claims, and being in conflict with plaintiff's claims, constitute a cloud upon his title. It is further alleged that Claudia Wegner claims an interest in the Royal and the Dixie claims, but that her interest therein was abandoned by reason of the failure by her and her codefendants to do any assessment work on them for the year 1916, and hence that her claim is wholly without right. It further appears inferentially that, at the time plaintiff located the Royal Dixie and the Dixie Extension, he knew of the existence of the Sutter locations.

The amended complaint is not a model pleading. It would [1] have been entirely sufficient if plaintiff had confined himself to appropriate allegations showing his right to the ground covered by his locations, and left it to the defendants to disclose the nature of their claim. It was not necessary for him to go further, and show that defendants' adverse claim is without foundation. (*Woody* v. *Hinds*, 30 Mont. 189, 76 Pac. 1.) Since, however, he has assumed to do this, and the demurrer admits the truth of his allegations in this behalf, the question submitted for decision is whether, assuming the plain-

tiff's allegations to be true, they so far impeach the validity of the Sutter locations, or any of them, as to put the defendants upon the defensive.

In view of the fact that plaintiff made his locations with [2] knowledge that the defendants were claiming the ground under the Sutter locations, the allegations touching defects in the recorded certificates of these claims become wholly immaterial. (Rev. Codes, sec. 2293.) They may be passed without further notice. The important question presented is whether the ground in controversy was vacant at the time the Sutter locations were made, or, if not, whether the conveyance of them by Nietert put the defendants—the Sutters and Noble—in position to make valid relocation of the Sutter claims. That the earlier location of them was invalid there [3] can be no question. The Royal and Dixie being themselves valid and subsisting locations, the ground was not public domain, and therefore not open to exploration and purchase under the federal statute. (U. S. Rev. Stats., sec. 2319 (6 Fed. Stats. Ann., 2d ed., p. 509; U. S. Comp. Stats., sec. 4614.)

Section 2322, Revised Statutes of the United States (6 Fed. Stats. Ann., 2d ed., p. 523; U. S. Comp. Stats., sec. 4618), guarantees the exclusive right of possession to the prior locator, and thus excludes the idea that anyone else may enter thereon for any purpose during the life of a prior location. (*Belk* v. *Meagher*, 104 U. S. 279, 26 L. Ed. 735 [see, also, Rose's U. S. Notes]; *Brown* v. *Gurney*, 201 U. S. 184, 50 L. Ed. 717, 26 Sup. Ct. Rep. 509; *Gwillim* v. *Donnellan*, 115 U. S. 45, 29 L. Ed. 348, 5 Sup. Ct. Rep. 1110; *Farrell* v. *Lockhart*, 210 U. S. 142, 16 L. R. A. (n. s.) 162, 52 L. Ed. 994, 28 Sup. Ct. Rep. 681; *Street* v. *Delta Mining Co.*, 42 Mont. 371, 112 Pac. 701.) The law on this subject is well stated in volume 18 R. C. L., at page 1136, as follows: "A valid location of a [4, 5] mining claim so long as it is in full force and effect, operates as a bar to a second location of the premises so

claimed. Hence it is a general rule that an attempted location of a mining claim, based upon a discovery within a then valid and subsisting claim, is absolutely void for the purpose of founding an adverse claim, and does not attach upon the subsequent failure of the first locator to do the required annual assessment work; and a location of a mining claim at a time when a senior locator is not in default under state or federal laws is subordinate to a relocation by a stranger made after the rights of the first locator lapsed because of such default.'' The rule thus stated is conclusive as to the invalidity of the Sutter claims when they were first located. Did the ground become subject to relocation by reason of the conveyance of the Royal and Dixie claims by Nietert to the defendant? This inquiry, we think, must be answered in the negative. Under the provisions of section 2289 of the Revised Codes, the locator [6] or claimant may, at any time, relocate his own claim for any purpose except to avoid the doing of annual labor thereon required by the federal statute (U. S. Rev. Stats., sec. 2324; 6 Fed. Stats. Ann., 2d ed., p. 533; U. S. Comp. Stats., sec. 4620), subject to the proviso, however, that the relocation must comply in all respects with sections 2283, 2284 and 2286 of the Revised Codes.

It will be noted that defendant Wegner was not one of the locators of the Sutter claims and that she did not join in [7] relocating them. The relocation of the Sutter claims, so far as the two Sutters and Noble were concerned, was an abandonment of the Royal and Dixie locations. This, however, did not affect the rights of Wegner under her conveyance from Nietert. Her interest remained unaffected by the abandonment by them of their interest. She became their cotenant by virtue of the conveyance by Nietert. They, therefore, could not pursue such a course of conduct as to destroy her interest. She retained it under the conveyance until such time as she chose to convey it to some other person, or until she had concluded to abandon it. As the Nietert interest was based upon

valid subsisting locations, in the absence of some act on her part tantamount to an abandonment, the Royal and Dixie claims were still valid and subsisting claims at the time the Sutter relocations were made. It continued so until the year 1916, for the complaint alleges that Nietert owned and possessed these claims and did the annual representation work thereon up to and including the year 1915. The work done [8] during the year 1915 was sufficient to preserve Nietert's right until the 31st of December, 1916. (*McKay* v. *McDougall,* 25 Mont. 258, 87 Am. St. Rep. 395, 64 Pac. 669.) Under the application of the rule above the relocations were void, and the two Sutters and Noble were in no better position by reason of them than when they made the first locations. The result is that they acquired no right by virtue of their relocations. By reason of the fact that neither they nor Wegner did or caused to be done the annual representation work for the year 1916, the Nietert claims became subject to forfeiture, and thus became subject to relocation by plaintiff or any other person who chose to relocate them. They were in condition to be forfeited, and were forfeited by the locations made by plaintiff.

Aside from these considerations, it is alleged that the [9] excavation work required by the statute on the Sutter No. 1 and Sutter No. 3 was not done when they were relocated. This is expressly required upon relocation by the owner of his own claim. (Rev. Codes, sec. 2289.) The failure to do this then or thereafter, and before plaintiff made his locations, rendered the attempted relocation of them nugatory. It is a question whether the plaintiff's allegation on this subject should not have been broad enough to negative the idea that this work was done prior to the making of his locations. We do not venture to decide this question here, because counsel have not referred to it in their briefs. We call attention to it for the reason that the statute declares that the period of time prescribed for the performance of any act shall not be deemed

mandatory when the act shall have been performed before the rights of third parties have intervened. We are of the opinion that the other facts alleged in the amended complaint are sufficient to require an answer by the defendants. We think, also, that it does not merit condemnation on any of the grounds alleged in the special demurrer.

The judgment is reversed and the cause is remanded to the district court, with directions to set aside the judgment and overrule the demurrer.

*Reversed and remanded.*

ASSOCIATE JUSTICES REYNOLDS, COOPER, HOLLOWAY and GALEN concur.

Rehearing denied June 20, 1921.