# BENNETT *v.* HARKRADER.

ERROR TO THE DISTRICT COURT OF THE UNITED STATES FOR THE DISTRICT OF ALASKA.

No. 58. Argued March 26, 27, 1895. — Decided May 27, 1895.

The location certificate in this case, though defective in form, was properly introduced for the purpose of showing the time when the possession was taken, and to point out, as far as it might, the property which was taken possession of.

The instructions complained of properly presented to the jury the two ultimate questions to be decided by it.

In Oregon a general verdict for the plaintiff, where the complaint alleges that the plaintiff is entitled to the possession of certain described property which is unlawfully detained by the defendant, and the possession of which the plaintiff prays to recover, is sufficient.

WILLIAM Bennett, for himself and as the administrator of M. Gibbons, deceased, having made application in the United States land office at Sitka, Alaska, for a patent to what is known as the Aurora lode mining claim, the defendant in error, George Harkrader, filed an adverse claim in that office, and subsequently, under the authority of Rev. Stat., § 2326, commenced in the District Court of the United States for the District of Alaska this action in support of such claim. After answer and reply, the case came on for trial and resulted in a verdict and judgment for the plaintiff, to review which judgment the defendant sued out this writ of error. The plaintiff

was the owner of certain mining claims known as the Bulger Hill and Nugget Gulch placer mining claims. The description of the former in the complaint is as follows:

"Commencing at post No. 10 of the U. S. Survey, known and recorded as the Bulger Hill survey, whence United States mineral monument No. 2, duly established by United States survey and recorded as a permanent monument, bears north seventy-six degrees (76°) east eleven hundred and seventy-eight (1178) feet; thence running north thirty-four degrees and forty-five minutes (34° 45') east one thousand (1000) feet to angle No. 1; thence running south twenty-two degrees (22°) east two hundred (200) feet to angle No. 2; thence south forty-one degrees and thirty minutes (41° 30') east five hundred and ninety-four (594) feet to angle No. 3; thence running south thirty-seven degrees and thirty minutes (37° 30') west nine hundred and ninety (990) feet to angle No. 4; thence north thirty-six degrees and fifteen minutes (36° 15') west seven hundred and thirty-seven (737) feet to place of beginning."

On the trial the plaintiff offered in evidence the following location certificate:

"Notice. — The undersigned claim five hill claims of two hundred feet each frontage and running back one thousand feet, thence running from a stake on the west bank of Ice gulch to a similar stake one thousand feet distant, near the mouth of Quartz gulch.

"April 6th, 1881.                    TOM LINEHAM.
                                     JOHN OLDS.
                                     TOM KERNAN.
                                     PETE BULGER.
                                     PAT. MCGLINCHY.
"This company is known as the Bulger Hill Company.
                              "R. DIXON, Recorder.
"April 8th, 1881."

This was objected to as incompetent and void for uncertainty, but the objection was overruled, and the location certificate admitted in evidence.

The court, among other instructions, gave the following :

"You have two ultimate questions to consider and those only, namely :

"(1) Is the plaintiff the owner of the Bulger Hill and the Nugget Gulch placer claims and entitled to the possession of the soil included within them, and are they located on the grounds as he has described them? Or —

"(2) Are the defendants the owners of the Aurora lode and entitled to the possession of the soil embracing it, and is it situated on the ground called for in the description in their answer?"

To the giving of which instructions the defendants duly excepted. The verdict of the jury was in these words: "We, the jury, find for plaintiff, R. S. Belknap, Foreman." The sufficiency of this verdict was challenged, but sustained by the court.

*Mr. John H. Mitchell* for plaintiff in error. *Mr. M. B. Gerry* and *Mr. D. A. McKnight* were on his brief.

*Mr. Samuel F. Phillips* for defendant in error. *Mr. H. W. Blair, Mr. Oscar Foote* and *Mr. F. D. McKenney* were on his brief.

Mr. Justice Brewer delivered the opinion of the court.

The ruling of the court in admitting the location certificate is the first matter presented for our consideration. The ground of the objection is the uncertainty in the description. Section 2324, Rev. Stat., provides that "the location must be distinctly marked on the ground, so that its boundaries can be readily traced. All records of mining claims hereafter made shall contain the name or names of the locators, the date of the location, and such a description of the claim or claims located by reference to some natural object or permanent monument as will identify the claim."

It is obvious that the description is quite imperfect, and yet it does not follow therefrom that there was error in admitting

the certificate in evidence. The description of the property found in the complaint was evidently prepared with care and is apparently open to no objection. At least none has been suggested by counsel. But the record shows that testimony was introduced on behalf of the plaintiff connecting the description in the certificate with that in the complaint, and tending to show that the property described by the one is that described by the other; and also that the mining claim was located and staked on its boundaries as the law and the miners' rules and regulations of that district required. Conceding the indefiniteness of the description in the certificate, it does not follow that it is absolutely void, for, as said by this court in *Hammer* v. *Garfield Mining Co.*, 130 U. S. 291, 299, after quoting from section 2324: "These provisions, as appears on their face, are designed to secure a definite description — one so plain that the claim can be readily ascertained. A reference to some natural object or permanent monument is named for that purpose. Of course the section means, when such reference can be made. Mining lode claims are frequently found where there are no permanent monuments or natural objects other than rocks or neighboring hills. Stakes driven into the ground are in such cases the most certain means of identification."

But whatever may be thought of its imperfections, the rights claimed by plaintiff by virtue of the attempted location are protected by the legislation of Congress. In 1884, after the location of this mining claim and prior to the commencement of this action, Congress passed an act in reference to Alaska, act of May 17, 1884, c. 53, 23 Stat. 24, in which are the following provisions:

"Sec. 8. That the said District of Alaska is hereby created a land district, and a United States land office for said district is hereby located at Sitka.

    &ast;    &ast;    &ast;    &ast;    &ast;

"And the laws of the United States relating to mining claims and the rights incident thereto shall from and after the passage of this act be in full force and effect in said district, under the administration thereof herein provided for, subject

to such regulations as may be made by the Secretary of the Interior, approved by the President: ·

"*Provided*, That the Indians or other persons in said district shall not be disturbed in the possession of any lands actually in their use or occupation or now claimed by them, but the terms under which such persons may acquire title to such lands is reserved for future legislation by Congress;

"*And provided further*, That parties who have located mines or mineral privileges therein under the laws of the United States applicable to the public domain, or who have occupied and improved or exercised acts of ownership over such claims, shall not be disturbed therein, but shall be allowed to perfect their title to such claims by payment as aforesaid;

\*      \*      \*      \*      \*

"But nothing contained in this act shall be construed to put in force in said district the general land laws of the United States."

This guarantees not only to parties who have located mining claims under the laws of the United States, but to those who have occupied and improved or exercised acts of ownership over such claims the right to perfect their title. Obviously the purpose of Congress in this act was to secure to those parties who were in actual possession of mineral claims in the Territory of Alaska the privilege of acquiring full title thereto, and this notwithstanding their failure to take all the steps required by the general mining laws of the United States with reference to the location of such claims. It was to be expected that, owing to the primitive condition of things in the territory, in the absence of a government survey, and perhaps of persons competent to make accurate surveys, many irregularities and imperfections would exist, and Congress intended that the possessor should be secured in his possession and be permitted to perfect a title to the property possessed. Such being the clear import of the statute, it was perfectly proper to introduce the location certificate, however defective in form, for the purpose of showing the time when the possession was taken, and to point out so far as it did the property which was taken possession of. The same observations may be made in reference to the other location certificates offered in evidence.

So. far as respects the two instructions complained of, it cannot be doubted that they are correct statements of the law. The two ultimate questions for the jury were as stated. Indeed, the argument of defendants' counsel is rather to the effect that other instructions should have been given and the case not left unexplained, as it would seem to be by these. It is sufficient to say in reference to this line of argument that the record does not purport to contain all the instructions. It is to be assumed, if others were needed, as doubtless they were, to fully present to the jury the subordinate questions, that they were given; and, further, if no such instructions were given, it is generally true that a party, who thinks an instruction in respect to any matter ought to be given, must ask for such instruction, and failing to ask for it will not be heard in a reviewing court to allege that there was error in the want of it. The record shows that the defendant did ask some instructions which were refused, but as it is practically conceded by counsel that they contained matter inappropriate to the issue on trial, we need not stop to inquire whether the court committed any error in failing to give them.

The remaining question is as to the verdict, which is simply "for plaintiff." By the seventh section of the act of Congress of May 17, 1884, heretofore referred to, 23 Stat. 24, it is provided that "the general laws of the State of Oregon, now in force, are hereby declared to be the law in said district, so far as the same may be applicable and not in conflict with the provisions of this act or of the laws of the United States." The statute of Oregon (1 Hill's Annotated Laws of Oregon, p. 380, § 320) requires the jury in an action for the possession of real estate to find as follows: "First, if the verdict be for a plaintiff, that he is entitled to the possession of the property described in the complaint, or some part thereof, or some undivided share or interest in either, and the nature and duration of his estate in such property, part thereof, or undivided share or interest in either, as the case may be."

The verdict in this case does not state, in terms, that the plaintiff is entitled to the possession of the property described in the complaint, or any part thereof; neither does it state the

nature or duration of his estate in the property. Hence it is insisted that the verdict was irregular, and that no judgment should be rendered thereon, and in support thereof the cases of *Jones* v. *Snider*, 8 Oregon, 127, and *Pensacola Ice Company* v. *Perry*, 120 U. S. 319, are cited. We do not think the defect, if it be one, is sufficient to vitiate the judgment. Where the complaint alleges that the plaintiff is entitled to the possession of certain described property, which is unlawfully detained by the defendant and the possession of which the plaintiff prays to recover, a general verdict for the plaintiff is a finding that he is entitled to the possession of all the property described in the complaint. Again, in this action, brought under a special statute of the United States in support of an adverse claim, but one estate is involved in the controversy. No title in fee is or can be established. That remains in the United States, and the only question presented is the priority of right to purchase the fee. Hence the inapplicability of a statute regulating generally actions for the recovery of real estate, in which actions different kinds of title may be sufficient to sustain the right of recovery. It would be purely surplusage to find in terms a priority of the right to purchase when that is the only question which can be litigated in such statutory action. If the plaintiff owns the fee he is not called upon to file an adverse claim or commence such an action, and the statute providing therefor has no application. *Iron Silver Mining Co.* v. *Campbell*, 135 U. S. 286.

These are the only questions presented. In them we find no error, and, therefore, the judgment is

*Affirmed.*