[Sac. No. 804.    Department One.— August 6, 1901.]

## YREKA MINING AND MILLING COMPANY, Respondent, *v.* LUKE KNIGHT, Appellant.

Mining Claims — Evidence of Location — Marking of Boundaries — Possession — Relocation. — Where the only evidence of the marking of boundaries under old location notices, under which the plaintiff corporation deraigned title, was, that the notices definitely described the boundaries, and that sufficient monuments therein referred to were found to enable the boundaries to be readily traced at the time of suit, but the evidence showed that the plaintiff corporation was in possession under its title acquired from the locators, and that the claims had been possessed and worked by plaintiff and its predecessors in interest for over six years, the continuous possession and right of possession of the plaintiff was *prima facie* sufficient, as against a relocation made by the defendant, with knowledge of the prior locations and of plaintiff's title thereunder, solely on the ground of an alleged failure to do the requisite annual work.

ID. — ANNUAL WORK UPON CLAIMS HELD IN COMMON — BENEFIT OF CON-
TIGUOUS CLAIM — QUESTION OF FACT. — The plaintiff had the right,
as matter of law, to do the annual work upon one claim for the pro-
tection of another contiguous claim held in common, where the
work tended to the development of both claims; and the question
was one of fact for the jury, whether the work so done was for the
benefit of both claims.

ID. — WORK FOR DEVELOPMENT OF RELOCATED CLAIM — CONFLICTING
EVIDENCE — SUPPORT OF VERDICT. — Though the annual work of
plaintiff had not been done directly upon the claim relocated by the
defendant, yet where there was evidence tending to show that more
than the requisite amount of annual work had been done by plain-
tiff in running a tunnel, and in other improvements upon an ad-
joining claim necessary to develop a group of mines owned by
plaintiff in common, which included such relocated mine, and that
the work done tended to develop that mine, notwithstanding con-
flicting evidence for the defendant to the contrary, the verdict for
the plaintiff will not be disturbed upon appeal.

APPEAL from a judgment of the Superior Court of Siskiyou
County and from an order denying a new trial.   J. S. Beard,
Judge.

The facts are stated in the opinion.

Warren & Taylor, for Appellant.

O'Neill & Butler, for Respondent.

CHIPMAN, C. — Injunction.   Plaintiff alleges in its com-
plaint that it is, and for six years last past has been, the
owner in possession, and entitled to the possession, of certain
three quartz-mining claims situated in Siskiyou County, — to
wit, The Ada, Flora Blanche, and Ohio; that the mines are
contiguous, extending in the same direction, forming one con-
tinuous mining claim, four thousand five hundred feet in
length and six hundred feet in width, all containing valuable
quartz rock bearing gold; that on January 2, 1899, defendant
wrongfully entered upon a part of the Ada and a part of the
Flora Blanche claims, and made excavations, carried away,
and converted to his own use a large amount of valuable ore,
and that he threatens to continue to remove ores from said
mines.   Defendant denies the averments of the complaint, and
alleges that he entered upon the lands, January 2, 1899, " with
the intention to take up and locate a portion thereof as a mine,

and did stake out and mark said land," and "ever since said second day of January, 1899, has been the owner and entitled to the possession of said mining land, . . . known as the Mary Ann Quartz Mine." A jury was called, and certain twenty-five specific questions were submitted to and passed upon by them, and all were answered in favor of plaintiff. Thereupon the court made its conclusions of law: 1. That plaintiff is the owner and entitled to the possession, subject to the paramount title of the United States, of all lands embraced within the boundaries of the claims set forth in plaintiff's complaint; 2. That defendant's location is invalid and void, "for the reason that the same was not subject to location"; 3. That plaintiff is entitled to a decree enjoining defendant from entering upon the land embraced within the boundaries of plaintiff's said claims. Judgment was accordingly entered, from which and from the order denying his motion for a new trial defendant appeals.

It appeared that on January 29, 1892, written notices of location of the three claims in question — to wit, The Ada, Flora Blanche, and Ohio — were filed in the recorder's office, in the order named, by W. P. Sheffield, John Travers, and Harvey Ax, respectively, and said claims at that time had thereon a vein of gold-bearing quartz, in place; that these locations, as a whole, constituted a relocation of what had theretofore been known as the Klamath Quartz Mine, and were contiguous, as alleged in the complaint; that a local custom, which had been in force over seven years, required that in making locations "a notice be posted on the location, and also a copy recorded in the office of the county recorder"; that plaintiff deraigned title from these locators, and expended, in 1898, on the Ohio, $400, and on the Flora Blanche, $150, in work and improvements; that "on January 1, 1899, and prior to the time at which defendant claims to have located the Mary Ann Quartz Mine, plaintiff had resumed work and continued the same thereafter uninterruptedly and until the full amount of $300 had been expended as assessment-work for the year 1898."

The foregoing facts, mainly found by the jury, are not challenged, and stand as admitted. The jury found that John Travers distinctly marked upon the ground his location of the Flora Blanche, "in such manner as that its boundaries could be readily traced." The jury were asked that if they found as

above, then to find whether the markings " were made according to the calls in his notice of location, which has been introduced in evidence, in whole or in part; and if in part only, then what part." The jury answered: " 1. Yes; 2. In part; 3. On the southwest end center line and S. W. corner and N. W. corner." Similarly, the jury found as to the Ada, that Sheffield's location was by him distinctly marked, and " in such manner as that its boundaries could be readily traced "; and that such markings were, in part, according to the calls of the written location; namely, " On the N. E. end center line and S. W. corner." Likewise it was found that the Ohio was distinctly traced on the ground by Harvey Ax, and that his location was marked according to the written location in part by " N. E. end center line and N. W. corner."

We think there was sufficient evidence to support the verdict. The locations were made in 1892, and the notices, copies of which were introduced in evidence, contained such specific calls and references to monuments that a surveyor would have no difficulty in locating the boundaries, with knowledge of the location of these monuments testified to by the witnesses. It is true, the witnesses with the location notices in their hands were at the time unable to find all of the particular monuments referred to in the notices, but it does not follow from that fact that the monuments were never placed there, or that the boundaries of the locations could not be ascertained. These notices were filed in 1892, and in six years many changes might take place along the boundary lines, which would account for the witnesses not being able to discover all the particular monuments referred to. It is true, as claimed by appellant, that it would be insufficient marking of boundaries of a mining claim to place thereon only such monuments as were found by the witnesses, and make no other markings of boundaries. The question here is not dependent alone on the evidence as to particular monuments which were found; notices were filed as early as 1892, claiming ground theretofore well known as the Klamath Mines; these notices were accessible, and presumably were known to defendant, and with them, as we have said, the boundaries could be traced, for they were so specific in their directions, that, with the monuments testified to being found, the boundaries could be defined. The jury found that the claims had been marked out by the locators so

that the boundaries could be readily traced, and it is urged that there was no evidence to support such finding. There was no evidence of this fact, except the location notices and the discovery of the monuments, already referred to. The locators were not called as witnesses, nor was any person called who assisted in making the locations. The jury must have reached the conclusion that the locators in fact did what the evidence showed they might have done, — i. e., they found that the notices of location definitely described the boundaries, and that sufficient monuments were found, corresponding with those mentioned in the notices, to enable these boundaries to be traced at this time, and hence concluded that the locators originally marked the boundaries so as that they might be readily traced. Plaintiff was in possession under title deraigned from these locators. As against a relocation by a person having knowledge of the former locations, and of plaintiff's possession as successor in interest, there was evidence sufficient *prima facie* to support the verdict. Defendant went into possession and made his relocation, not because there had never been a valid location, but, as he himself testified, because he thought the claims had been abandoned, and were open to location, and because no work had been done on the claims for the year 1898.

The jury found that plaintiff, at the commencement of the suit, February 13, 1899, was in possession, and for six years prior thereto it and its predecessors had been in possession.

Plaintiff's right to possession was evidenced by deeds from the original locators, and their grantees to plaintiff, and there was evidence of actual possession in 1897 and in 1898. This was sufficient, as against defendant.

The remaining question relates to the finding that there was "$400 worth of work done on the Ohio claim, $150 on the Flora Blanche, being $550 in all for the benefit of all three claims," for the year of 1898. There was no work done on the Ada that year. Plaintiff claims that the work done on the Ohio and Flora Blanche was for the benefit of the group. It was held in *De Noon* v. *Morrison*, 83 Cal. 163, following *St. Louis Smelting Co.* v. *Kemp*, 104 U. S. 654, that "as a matter of law, the plaintiff had the right to do the work necessary for the protection of both claims, or one of them, both being held by her in common." It was further held, that it is for the jury

to determine, as a question of fact, whether work done on one of two contiguous claims owned by the same person is for the benefit of both claims.   (See also *Altoona Quicksilver M. Co.* v. *Integral Quicksilver M. Co.,* 114 Cal. 100.)   There was evidence tending to show that the work consisted of running a tunnel, stoping from it on both sides, building ore-chutes, tracks, blacksmith-shop, and a house, and getting out timbers, amounting in value to nearly one thousand dollars, and that the amount of work done was about equal on these two claims. The tunnel was run partly on the Ohio and partly on the Flora Blanche, at a point near the dividing line of the two claims, and about the center, or along the ledge.   The superintendent testified that the work was intended to develop the whole group of mines, and he gave his reasons for believing that the work tended to develop the Ada.   There was some evidence corroborative of this testimony.   Defendant introduced witnesses who testified, in effect, that the work done could not, in their opinion, be of the slightest benefit to the Ada claim, nor in any way tend to develop it.   The jury might well have taken this view of the evidence, but we cannot say that the evidence was insufficient to warrant the conclusion to which the jury came.   The evidence on the point was in conflict, and under the well-settled rule we cannot interfere with the verdict.

It is advised that the judgment and order be affirmed.

Gray, C., and Smith, C., concurred.

For the reasons given in the foregoing opinion the judgment and order are affirmed.

Garoutte, J., Harrison, J., Van Dyke, J.