[No. 19823. Department One. October 18, 1926.]

G. W. NINEMIRE et al., Respondents, v. C. O. NELSON et al., Defendants, C. O. NELSON et al., Appellants.[1]

[1] MINES AND MINERALS (6-1).—LOCATION—NOTICE—SUFFICIENCY. A mining location notice, liberally construed, especially as against one having notice thereof and of the prior discovery, will not be held invalid for insufficient description, under Rem. Comp. Stat., § 8622, requiring reference to "some natural object or permanent monument" identifying the claim, where it refers to two adjoining claims by name.

[2] SAME (9)—RELOCATION OF ABANDONED CLAIM—NOTICE —SUFFICIENCY. Where no valid location had ever been made on the same property, a mining location notice need not refer to it as "abandoned" property.

[3] SAME (12)—ACTION TO RECOVER POSSESSION. One having actual notice of the location and boundaries of a mining claim, cannot take advantage of a technical defect in the location notice to deprive the owner of his rights.

Appeal from a judgment of the superior court for Lewis county, Reynolds, J., entered July 23, 1925, entered upon a directed verdict in favor of the plaintiffs, in an action to determine conflicting claims to a mining claim. Affirmed.

W. N. Beal, James A. Stinson, and Hayden, Langhorne & Metzger, for appellants.

William A. Gilmore, Winter S. Martin, and Dysart & Ellsbury, for respondents.

ASKREN, J.—This is an action brought to recover possession of an undivided one-half interest in a mining claim in Skamania county. From a judgment entered on a directed verdict in favor of plaintiffs, the defendants C. O. Nelson and R. F. Brown appeal.

[1] Reported in 249 Pac. 990.

In the summer of 1923 one J. J. Baxter discovered gold in the Nigger Head Mining District of Skamania county. He posted notice, blazed lines and set stakes to mark the boundaries. He then filed his notice of location in the office of the county auditor, naming his discovery the Gold Dollar Claim. Thereafter he conveyed the whole thereof to the defendant McGlothlin, who in turn reconveyed to Baxter an undivided one-half interest. Baxter then conveyed this interest to Morgan and Ninemire, the respondents.

On December 15, 1923, the appellant Brown entered upon the premises included within the notice of the Gold Dollar location and claims to have discovered gold at approximately the same point where Baxter made discovery. He thereupon posted a notice of location and established lines and monuments for a claim to be known as the La Rica. The lines of the claim were such as to carve out of the Gold Dollar claim the points of discovery (the only apparently valuable part thereof), the northwest and northeast corners being identical, and the claim proper running diagonally across the Gold Dollar in an easterly direction. The notice of relocation was filed with the county auditor. Brown, subsequent to the posting of the notice but prior to its filing with the county auditor, conveyed an undivided one-half interest to McGlothlin. Thereafter Nelson became interested in the claim through Brown. McGlothlin, Nelson and Brown took possession of the claim and have refused the respondents access to, or any right therein.

Upon trial, the evidence disclosed that Brown, prior to his alleged discovery on December 15, 1923, had been upon the Gold Dollar claim in November and had observed the cut made thereon by Baxter, and had told Morgan that the claim was not properly located. The evidence shows that some one thereafter removed the

markings made by Baxter and used some of the monuments by obliterating or chopping off the Baxter notice; and Brown produced at the time of trial the original notice of Baxter's discovery that had been placed in a can at the point of discovery. The record fully disclosed that any claimed discovery made by Brown was made after full knowledge of the location by Baxter, and of the monuments and marks delineating the same, and that any location made by him can only be upheld if the court can say that the notice of location by Baxter was clearly void. The evidence also shows that Brown's attempted location as being on forfeited or abandoned property did not refer to the forfeiture or abandonment of the owners of the Gold Dollar, for he never believed at any time that the Gold Dollar claim was either abandoned or forfeited, but thought defects in the notice would permit him to take possession thereof.

[1] Bearing in mind that the law does not look with favor upon him who deliberately and knowingly seeks to appropriate to himself the fruits of another's labor, and that the policy of the law will always uphold an original discovery, even though there be technical defects, if the location is made in good faith, and the notice is not such as misleads others, our inquiry must first be directed to the objections made to the sufficiency of Baxter's notice.

It must be admitted that the claim is not described with that degree of precision that might be wished for, and that the notice could hardly be used as a model for others. But that it is such that anyone wishing to identify the location of the claim could reasonably do so cannot be doubted.

In *Bismark Mountain Gold Mining Co. v. North Sunbeam Gold Co.,* 14 Idaho 516, 95 Pac. 14, is found a

clear statement of the purpose of the notice. The court said:

"It is the well-settled doctrine of all of the later decisions that location notices and records should receive a liberal construction, to the end of upholding a location made in good faith. In *Londonderry M. Co. v. United G. M. Co.*, 38 Colo. 480, 88 Pac. 455, where the court was considering the sufficiency of a location notice, it is said: 'Every case where this question is raised must therefore depend upon its own circumstances. As previously stated, the purpose of such location certificate is to give notice to subsequent locators; and, if by reasonable construction the language descriptive of the situs of the claim, aided or unaided by testimony, aliunde, will do so, it is sufficient in this respect. In other words, the object of requiring a reference to a natural object or permanent monument is to furnish means by which to identify the claim, and whatever reference will accomplish this object satisfies the law.' "

The purpose of the notice is to notify others that the ground is taken. That purpose was served here, because from Brown's own testimony he knew all about the claim. One of the objections to the notice is that it fails to tie the claim up to some natural monument from which its permanent location can be definitely identified and established. The notice, after giving the dimensions, described the claim as "bordered on the north end by Camp creek. It also joins the Gold Eagle on the south." Section 8622, Rem. Comp. Stat. [P. C. § 3778], requires that the notice shall contain:

"  .  .  .  such a description of the claim or claims located by reference to some natural object or permanent monument as will identify the claim."

It seems to us that Camp creek, and Gold Eagle claim are natural objects or permanent monuments within the meaning of the statute. That learned

author, Mr. Lindley, in his work on Mines, vol. 2 (3d ed.), p. 908, states the rule as follows:

" 'Natural Objects' and 'Permanent Monuments'— The words 'natural objects' and 'permanent monuments' are general terms, susceptible of different shades of meaning, depending largely upon their application. What might be regarded as a permanent monument for one purpose might not be so considered with reference to a different purpose. The same rule applies to natural objects. There is no particular necessity for drawing a distinction between 'natural objects' such as streams, rivers, ponds, highways, trees, and other things, *ejusdem generis,* and 'permanent monuments,' which may imply an element of artificial construction, it being the manifest intent of the law that any object of a fairly permanent character, whether natural or artificial, may, if sufficiently prominent, serve for the purpose of reference and identification.

"As to whether a given notice or certificate of location contains such a description of the claim as located by reference to some natural object or permanent monument as will identify it, is a question of fact to be determined by the jury, and parol evidence is admissible for the purpose of proving that the thing named in the certificate is, in fact, a natural object or permanent monument. In the absence of evidence for or against the sufficiency of the reference in the notice, it will be presumed to be sufficient to identify the claim.

"The following cases indicate the views of the courts as to what are natural objects or permanent monuments:—

"Prominent posts, or stakes, firmly planted in the ground; stones, if the proper size and properly marked; monuments, prospect holes, and shafts, a depot and cliff of rocks, may be sufficient as permanent monuments within the meaning of the law. The boundary lines of well known claims have uniformly been held to be such, whether patented or not."

[2] It is also contended that the notice was insufficient in that it did not describe the property as a re-

location of abandoned property. This is based upon the contention that nearby property contained evidence of former workings, and the ruins of a burned building. Respondent's evidence was to the effect that there was nothing to indicate that any portion of the claim was abandoned. No valid location had ever been made on the same property prior thereto, and we think the statute, Rem. Comp. Stat., § 8629 [P. C. § 3785], which provides that when locations are made in whole or in part upon abandoned ground the notice shall so state, does not require one to establish conclusively that the property was never before located, but if the conditions present are such as to lead the locator to believe that the property is public domain open to location he is entitled to rely thereon.

We do not think there was any substantial evidence offered to contradict the testimony of respondents and their witnesses upon this point, and that the court was not in error in holding that a directed verdict should be entered.

[3] But if the court was in error in such holding, it is immaterial for there is a stronger reason why appellant cannot prevail in this action. If it be assumed that the notice in question was technically defective, it will not avail appellant who had notice of the claim.

". . . Where it is shown that a subsequent locator had actual notice of the location and boundaries neither he nor his grantee should be permitted to take advantage of some technical defect in the notice." Lindley on Mines, vol. 2, § 383.

In *Bismark Mountain Gold Mining Co. v. North Sunbeam Gold Co., supra,* the court, after finding that the evidence justified the presumption that a grantee knew of the location of a claim, said:

"If Oster had actual notice of the location and boundaries of said claims, he nor his grantees will be

permitted to take advantage of some technical defect in the location notice, where it appears that said claims were located in good faith.''

The observation of the court in *Flynn Group Mining Co. v. Murphy,* 18 Idaho 266, 109 Pac. 851, 138 Am. St. 201, is quite applicable to this case, because in both cases the new locator thought he could take advantage of a defect in the notice. The court said:

''We think the notice in this case is sufficient under the facts of the case, as it clearly appears that Whelan, who located the Erin fraction claim for appellant, had full knowledge of the location of the Murphy fraction claim and one of the principal reasons that he gives for locating it is that on an examination of the location notice he concluded it was defective. Whelan had actual notice that the ground had been located, also constructive notice by an examination of the recorded notice, and had seen the work done by Murphy on the claim for six or seven years. It is true that Whelan also claimed that the ground was not subject to location at the time Murphy located it as the Murphy fraction for the reason that the ground was covered by other locations, but the trial court found against this contention. Whelan testified that after examining the notice, he concluded it was not sufficient.''

With this view of the evidence, it is not necessary to determine whether the notice of appellant Brown, which failed to state whether the whole or only part of the La Rica claim was upon abandoned property, sufficiently complied with the law to be valid.

A careful reading of the record discloses no equity of any character in favor of the appellants, and the judgment is therefore affirmed.

TOLMAN, C. J., BRIDGES, and FULLERTON, JJ., concur.