235 P.2d 319

LUCKY FIVE MINING CO. v. CENTRAL IDAHO PLACER GOLD MINING CO., LIMITED, et al.

No. 7706.

Supreme Court of Idaho.

July 26, 1951.

James G. Towles, Kellogg, Therrett Towles, Spokane, Wash., Morton H. Van Nuys, Seattle, Wash., for appellant.

492

Wilbur L. Campbell, Robert M. Robson, Grangeville, Earle W. Morgan, Lewiston, for respondents.

TAYLOR, Justice.

The appellant, plaintiff below, brought this action in 1943 to quiet its title to eight placer mining claims in Elk City and Orogrande mining districts in Idaho County, Idaho. Due to delays, allegedly occasioned by World War II, the action did not come to trial until March 28, 1950. In the meantime, the complaint was amended to set forth a detailed metes and bounds description of two of the claims, the "Relief Placer No. 2" and "California Placer." The amendment was made to conform the description in the pleading to amended lo-

cation notices filed in 1947. The answer of the defendants Noon, Higgins and H. & H. Mines, a copartnership, was amended to meet the amendments of the complaint. Defendants Morgan and Sheppard filed answers and cross-complaints subsequent to the amendment of the complaint.

Following findings made, the court entered its decree quieting plaintiff's title in all of the claims, subject, however, to leases held by the defendants Noon, Higgins and H. & H. Mines. There are two leases, both dated October 6, 1939, executed by the plaintiff as lessor in favor of W. A. Noon as lessee. Defendants plead that Noon holds these lcases for the benefit of himself, Higgins and H. & H. Mines. One conveys a leasehold estate in the "Rock Pile Placer" and "Rock Pile No. 2 Placer." The other conveys a leasehold estate in the "California," "Idaho," "Oregon," and "Relief Placer No. 2." Through error of the draftsman, the decree was drawn to include in this last mentioned lease the "Ophir Placer" and "Ophir No. 2 Placer." This error is assigned by appellant and acknowledged by respondents.

In its findings the trial court accepted the description of seven of the claims as set out in the complaint, but refused to accept plaintiff's description of Relief Placer No. 2. As to this claim, plaintiff's title was quieted "as described and marked on the ground in the original location notice thereof and as described in plaintiff's Exhibit No. 3 and as shown on H. & H. Mines' Exhibit No. 2.

The ground described for this claim in the amendment to the complaint covers a large part of the ground described in the location notice of the "Triangle Placer Claim," title to which was quieted in the defendants Sheppard and Noon. It is contended by defendants and cross-complainants that the land described in the original location of the Relief Placer No. 2 does not constitute any part of the land described in the location of the Triangle Placer Claim; that is, there is actually no conflict between these two claims. While the plaintiff's position is that a greater part of the ground covered by the Triangle Claim is included within the bounds of the Relief Placer No. 2.

The sole question presented is the sufficiency of the evidence to support the findings and decree of the court quieting title to the disputed area in the defendants, Sheppard and Noon. Relief Placer No. 2 was located by J. J. Schoner, Charles Forman, W. F. Boettcher and George Satchan, October 5, 1918. In the notice the claim is described as follows:

"The Relief Placer no. 2 comences at this notice and discovery runing 600 feet East to North East corner stake, thance 1500 feet South to South east corner stake, thance 600 feet West to Southwest corner stake, thance 1500 feet north to North West corner stake and place of begining.

494

H. & H. MINES EX. 2

"This claim is 300 feet *aboft mond* of Relief Creek.

"The Mining Claim above described shall be known as the Relief Placer No. 2. Situated at Crooked River right hand Ba*ar*."

It is agreed, and the court found, that plaintiff is the present owner of the rights acquired by this location. Defendants raised no question of forfeiture by failure to do the required assessment work. The proof shows that the claim was maintained valid in that respect.

J. J. Schoner, one of the original locators, was of German descent and spoke English brokenly. It is assumed that the location notice was drawn by him. In any event, the parties agree on the interpretation of the words used. That is, the words "aboft mond of Relief Creek" are to be read, "Above the mouth of Relief Creek" and "Baar" means "bar." Through the area in question, Crooked River runs in a northerly direction. Relief Creek is a tributary flowing in from the east. Opposite the mouth of Relief Creek is a bar or island in the channel area. It is this bar which is believed to be valuable placer ground and is the area primarily desired by both parties. In the earlier part of the season this bar becomes an island, there being a channel on both the east and the west, both of which are occupied by the river at that season. During low water season the river is confined to the main channel, and flows around the easterly edge of the bar. This bar is described by some of the witnesses, including H. A. Heron, a licensed engineer and surveyor, and who had been a commissioned United States Mineral Surveyor, as a "right hand bar." The witnesses for the defense, including Walter Hovey Hill, a surveyor and mining engineer licensed in Idaho, described it as a "left hand bar." There is no evidence of any other bar within 300 feet of the mouth of Relief Creek. The same conflict appears in the interpretation placed by the witnesses on the words, "300 feet above the mouth of Relief Creek," the defense contending that this could mean 300 feet upstream on Crooked River, or 300 feet upstream on Relief Creek; while plaintiff's witness represented it as meaning 300 feet north of the mouth of Relief Creek; that is, to Schoner "above" meant "north." At the time of the trial all of the original locators of Relief Placer No. 2 were dead. Plaintiff's witness Clinkenbeard testified that in 1927 (at the time plaintiff purchased the claim from the original locators) Schoner pointed out to Clinkenbeard the corner post No. 1 and discovery monument, corner No. 2 and corner No. 3, and that later during the same summer he, himself, found corner No. 4. He described these monuments and the discovery pit and testified that they were located on the ground at the points shown on the plat made by surveyor Heron, Sheppard's Exhibit No. 1.

SURVEY PLAT
OF
"RELIEF" and "CALIFORNIA"
AND
ADJOINING and OVERLAPPIN
SITUATED ON
CROOKED RIVER, ELK CITY

Scale-1 inch = 400 feet

Surveyed Aug 1945, Replatted Oct 134
H A H

SHEPPARD'S EX. 1

From this testimony it appears that the discovery and the staking of the claim on the ground conformed to the requirements of the law. In fact, nothing to the contrary is offered by the defense, except the negative testimony of the defense witnesses to the effect that at the time they located the Triangle Claim they looked for posts or monuments which might indicate the ground they were locating had been previously located, and found none. The Triangle Placer Claim was located by A.

Anderson and R. M. Carrey on the 11th day of October, 1935, and their notice of location was filed October 25, 1935. The notice described the claim by metes and bounds as on H. & H. Mines' Exhibit No. 2, prepared by surveyor Hill. Thus, both of the claims as staked on the ground cover the bar in question.

In 1945, Mr. Clinkenbeard, who was an officer of plaintiff company, took a survey party on the ground to relocate the corners of Relief No. 2. This group included the surveyor Heron and witnesses Foss and Strack. These men and Mr. Clinkenbeard testified they found a caved in discovery pit, pointed out by Clinkenbeard, but no post or monument at that point; that they found corners No. 2 and No. 3 at points indicated by Clinkenbeard. These monuments bore ancient markings which were not readily legible. The engineer Heron testified he thought he could distinguish "Relief" on corner monument No. 2, and that he ran his survey back from this monument to the pit where No. 1 was supposed to be and then commencing from there ran his survey around the claim. Post No. 4 was not located until the next day. The sidehill area where it was thought to be had been burned over. A burned-off stump, partly squared, was determined upon as the corner. The No. 1 post, with the location notice inserted in a split on the top of the post, was found lying down in some brush some distance from the site of No. 1 corner, and was restored to the point where Clinkenbeard had indicated it should be. It appears this post had been torn down and cast away. This, in brief, is the most important part of the evidence concerning the location on the ground of Relief No. 2.

On the part of the defense, engineer Hill, taking the words of the original notice of location to mean 300 feet upstream from the mouth of Relief Creek, testified that corner No. 1 would be some 50 feet north of the north line of Cleveland Placer, and running thence east 600 feet, south 1500 feet, west 600 feet, and north 1500 feet to beginning, the claim would take in the area east of the Cleveland and south of the California, as shown on his map, H. & H. Mines' Exhibit No. 2. There is no other evidence in the record to support the location thus assumed by Hill. No witness testified to any discovery work, stakes, posts or monuments upon this assumed location, nor that any assessment work or mining work had ever been done by anyone thereon. This area, commencing with the line marked the "dredging limits," rises sharply through the shaded area and levels off to the east to form a bench land. Hill said he would call it a "bench," but that Schoner might have called it a "bar." Heron testified it could not be regarded as a bar; that it has no value as placer ground; and that while he agreed "above" ordinarily means upstream, "it's ridiculous to think of a placer claim being staked on a rocky hillside; just ridiculous."

From the foregoing it is fair to conclude there is no substantial evidence in the record to support the location on the ground of Relief No. 2 at the place fixed by Hill, save and except the assumption that "above" the mouth of Relief Creek means upstream. On the other hand, there is competent and substantial evidence to sustain the location on the ground as shown on Sheppard's Exhibit No. 1. (It is to be noticed that Heron testified some changes had been made by Clinkenbeard on the map as originally prepared by Heron.)

It must be remembered that in 1939, defendants Noon, Higgins, and H. & H. Mines became tenants of plaintiff in the possession of the Idaho, Oregon, California, and Relief No. 2 claims, known as the "Relief Creek Group." Noon, and one Tabor (in charge of testing the ground for defendants) testified they searched for and could not find the stakes or monuments of Relief No. 2. Although perhaps not definitely appearing in the evidence, the implication from their testimony and the testimony of Hill is that this searching was done on the ground in dispute and not on the bench land assumed by Hill. It is significant that Tabor, although shown the corners of the Triangle claim by locator Carrey, testified he did not ask Mr. Clinkenbeard to show him the corners of Relief No. 2. It does not appear from the record that any of the defendants or any one in their employ, while assuming to lease and occupy this claim as tenants, ever asked Mr. Clinkenbeard or anyone else connected with plaintiff to point out the boundaries of the claim, although Mr. Clinkenbeard was the manager of plaintiff, actively in charge, and went to the property every year. On July 30, 1941, defendant Noon personally executed an affidavit of "proof of work done" covering the assessment work for the previous year on the four leased claims, including the Relief No. 2, and mailed a copy to Clinkenbeard at Spokane. This proof purports to show that $400.00 worth of work was done by W. A. Noon "for and at the expense of Lucky Five Mining Company, owners." It also contains the statement sworn to by Noon: "All stakes, monuments or trees, marking boundaries of said claims, are in proper place and position." It is Noon who, in 1940, leased a one-half interest from defendant Mrs. Sheppard (formerly A. Anderson, one of the locators) and in 1949 purchased the other half interest in the Triangle claim from Carrey and wife. Apparently this Triangle property was acquired by Noon for the benefit of himself and the other defendants, Higgins and H. & H. Mines, as were the leases from plaintiff. Plaintiff asserts that any adverse interest, which the defendants acquired to ground occupied by them as tenants, must be regarded as held by them in trust for the plaintiff. The general rule is that a tenant cannot assert a title adverse to his landlord. 51 C.J.S., Landlord and Tenant, § 266; 32 Am.Jur., Landlord & Tenant, § 101; § 5–211, I.C.; Cusic v. Givens, 70 Idaho 229, 215 P.2d 297; Wells v. Cline, 19 Ohio App. 165;

Probst v. Hughes, 143 Okl. 11, 286 P. 875, 69 A.L.R. 929, and anno. 936; Trice v. Comstock, 8 Cir., 121 F. 620; Nichols v. Ora Tahoma M. Co., 62 Nev. 343, 151 P.2d 615.

The lease expressly obligates the tenants to occupy the property, exclude third parties therefrom, and do all assessment work required by law. This imposed upon them a duty to protect the landlord's title by informing themselves of the boundaries, and otherwise doing what was necessary to maintain the claims as valid and subsisting claims. Thus, defendants Noon, Higgins, and H. & H. Mines, are in no position to assert interests adverse to plaintiff. Having either actual notice of, or a duty to notice, the conflict between Relief No. 2 and the Triangle claims, these defendants cannot take advantage of any technical defects in the original location notice of Relief No. 2. Sellers v. Taylor, 48 Idaho 116, 279 P. 617; Independence Placer Min. Co. v. Hellman, 62 Idaho 180, 109 P.2d 1038; Gerber v. Wheeler, 62 Idaho 673, 115 P.2d 100; Hayden Hill Consol. Min. Co. v. Lincoln Min. Co., 66 Idaho 430, 160 P.2d 468.

As to the right asserted by defendant Sheppard, under the Triangle location, we think the original location of Relief No. 2, while defective, was sufficient. The evidence is that the requirements of the law were substantially met. § 47–617, I.C.; 30 U.S.C.A. § 28.

"In the initiation of rights upon public mineral lands, as well as in the various steps taken by the miner to perfect his location, his proceedings are to be regarded with indulgence, and the notices required invariably receive at the hands of the courts a liberal construction." 2 Lindley on Mines, 3rd Ed., § 381.

"If, by any reasonable construction, in view of the surrounding circumstances, the language employed in the description will impart notice to subsequent locators, it is sufficient." Farmington Gold Min. Co. v. Rhymney Gold & Copper Co., 20 Utah 363, 58 P. 832, 833, 77 Am.St.Rep. 913.

This rule was adopted by this court in Bismark Mountain Min. Co. v. North Sunbeam Co., 14 Idaho 516, 95 P. 14; and has been applied many times. Morrison v. Regan, 8 Idaho 291, 67 P. 955; Snowy Peak Min. Co. v. Tamarack & C. Min. Co., 17 Idaho 630, 107 P. 60; Flynn Group Min. Co. v. Murphy, 18 Idaho 266, 109 P. 851; Independence Placer Min. Co. v. Knauss, 32 Idaho 269, 181 P. 710; Hawley v. Romney, 42 Idaho 645, 247 P. 1069; Law v. Fowler, 45 Idaho 1, 261 P. 667; Allen v. Laudahn, 59 Idaho 207, 81 P.2d 734. See also, 30 U.S.C.A. § 28, notes 161 and 172; Bennett v. Harkrader, 158 U.S. 441, 15 S. Ct. 863, 39 L.Ed. 1046; Cheesman v. Hart, C.C.Colo., 42 F. 98; Yreka M. & M. Co. v. Knight, 133 Cal. 544, 65 P. 1091; Ninemire v. Nelson, 140 Wash. 511, 249 P. 990; Steele v. Preble, 158 Or. 641, 77 P.2d 418. A comparison of these cases with the facts here impels us to the conclusion that the location notice of the Relief No. 2 is sufficient. The ground in dispute being cov-

ered by a valid subsisting location at the time of the location of the Triangle claim, the latter as to that land is void. Swanson v. Kettler, 17 Idaho 321, 105 P. 1059; Swanson v. Sears, 224 U.S. 180, 33 S.Ct. 455, 56 L.Ed. 721; Griffith v. Noonan, 58 Wyo. 395, 133 P.2d 375; 58 C.J.S., Mines and Minerals, § 85; 36 Am.Jur., Mines and Minerals, § 99.

Moreover, want of validity of the Relief No. 2 is not the theme of the defense in this case. Neither by pleading nor proof have the defendants attempted to make an affirmative attack upon it. In their pleadings they admit the original location, and upon the trial they expressly admitted that the annual work had been done. The defense throughout has been that the two claims do not conflict. Nor does the judgment of the trial court question the validity of Relief No. 2. Following the defense, the finding is that the two claims do not conflict. The decree quiets title in Noon and Sheppard to the land described in the location notice of the Triangle to the exclusion of plaintiff, and quiets title to Relief No. 2 in plaintiff.

■ The testimony of Clinkenbeard as to the pointing out of monuments and boundaries by Schoner is competent evidence. "Evidence as to reputation regarding a boundary, and declarations of deceased persons with reference thereto, is admitted because of necessity and because it is the best evidence available." Case v. Ericson, 44 Idaho 686, 258 P. 536, 538;

Becker v. Pugh, 17 Colo. 243, 29 P. 173; Daggett v. Yreka Min. & Mill. Co., 149 Cal. 357, 86 P. 968; Nichols v. Ora Tahoma Mining Co., supra, 62 Nev. at page 625, 151 P.2d 615; Doe v. Waterloo Min. Co., C.C.Cal., 55 F. 11. The affirmative testimony of plaintiff's witnesses that they saw stakes of the Relief No. 2 in place on the area in dispute, must be accorded greater weight than the negative testimony of witnesses who said they looked for but did not find such stakes. Independence Placer Min. Co. v. Hellman, supra; Temescal Oil Min. & Dev. Co. v. Salcido, 137 Cal. 211, 69 P. 1010; Miehlich v. Tintic Standard Mining Co., 60 Utah 569, 211 P. 686; McEvoy v. Hyman, C.C.Colo., 25 F. 596.

■ The rule is that: "if the trial court's findings are sustained by competent, substantial, though conflicting evidence, they will not be disturbed on appeal." Fogelstrom v. Murphy, 70 Idaho 488, 489, 222 P.2d 1080, 1083. However, in this case, as we have indicated, the finding of the trial court that there is no conflict between Relief Placer No. 2 and Triangle as staked on the ground, and that Relief No. 2 is located as indicated on the map drawn by Hill, H. & H. Mines' Exhibit No. 2, is not supported by any competent or substantial evidence. On the other hand, the evidence that there is a conflict between the claims is quite conclusive. Such being the case, a reversal is required.

That part of the decree which quiets title in defendants Sheppard and Noon to

any part of the ground embraced within the description of the Relief Placer No. 2 as described in the amendment to plaintiff's complaint and in conformity with the amended location notice filed in 1947, is reversed. The discovery of the Triangle not being on Relief No. 2, the remaining portion of the Triangle claim is recognized as valid and the decree is not disturbed as to that. The trial court is directed to quiet plaintiff's title to Relief Placer No. 2, as described in the amendment to its complaint, and to eliminate the two Ophir claims from the obligation of the lease to defendants Noon, Higgins, and H. & H. Mines. In all other respects the decree is affirmed.

Costs to appellant.

GIVENS, C. J., and PORTER, THOMAS, and KEETON, JJ., concur.